# United States Court of Appeals
## For the First Circuit

---

No. 99-1971

UNITED STATES OF AMERICA,

Appellee,

v.

BRIAN M. HOYLE,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Frank H. Freedman, U.S. District Judge]

---

Before

Boudin, Circuit Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

---

Peter F. Kuntz for appellant.

Todd E. Newhouse, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellee.

---

January 8, 2001

---

**BOWNES, <u>Senior Circuit Judge</u>.** In this appeal, the defendant-appellant, Brian Hoyle, attempts to reverse the judgment of conviction that followed his guilty plea. He further argues that if the conviction is affirmed, his case should be remanded for resentencing with new counsel. Determining that the district court did not err when it accepted the defendant's guilty plea and that the defendant was not the victim of ineffective assistance of counsel during sentencing, we affirm the district court.

## I.

We recount the facts as set forth in the Pre-Sentence Report (PSR). This rehearsal of the facts does not, of course, cover the facts that are applicable only to other defendants. On April 21, 1995, a grand jury returned an eight-count indictment charging Rex W. Cunningham, Jr., Brian Hoyle and Thomas Ferris. Cunningham was charged in all eight counts of the indictment. Ferris and Hoyle were only charged in count seven.

Cunningham is an associate of the Genovese Crime Family and was involved in loansharking, racketeering, operating an illegal gambling business and unlawful debt collection. Ferris is a licensed electrician and a longtime friend of Cunningham. He was well-aware of Cunningham's reputation as a loanshark

-2-

collector who used threats and violence to collect usurious loans and gambling debts. In June of 1992, Ferris asked Cunningham to send his loanshark collectors to visit several individuals who had contracted for his services, but had not paid in full. Each customer had been charged an exorbitant amount for the work performed and disputed the amount owed. Ferris responded by getting Cunningham involved to collect the full amount, to which Cunningham added twenty-five percent for his collection efforts.

On June 11, 1992, the government intercepted a conversation between Cunningham and Hoyle in which they discussed the list of Ferris's customers and the extortionate means to be used in order to get the customers to pay. The PSR recounts, from testimony given at Ferris's trial, the details of the dealings between Ferris and his customers and the subsequent collection efforts.

Hoyle was only charged with count seven of the indictment: conspiring to use extortionate means to collect extensions of credit in violation of 18 U.S.C. § 894. Count seven charges that from June of 1992, until November of 1992, Cunningham, Hoyle and Ferris conspired with each other and others to participate in the use of extortionate means to collect and attempt to collect extensions of credit.

On January 28, 1998, the defendant entered into a plea agreement with the government under Federal Rule of Criminal Procedure 11(e)(1)(C). Pursuant to the agreement, the defendant expected a sentence of 48 months in prison. At the Rule 11 hearing, the district court asked the defendant a series of questions before accepting his guilty plea:

> THE COURT: Have you told your lawyer the whole story without concealing any facts from him?
>
> THE DEFENDANT: Yes, I have.
>
> * * * *
>
> THE COURT: Has your attorney advised you about the nature of the charge against you, and any possible defense you may have?
>
> THE DEFENDANT: Yes, he has.
>
> * * * *
>
> THE COURT: Is your plea of guilty entirely free and voluntary?
>
> THE DEFENDANT: Yes, it is.

Afer reading count seven of the indictment in its entirety, the court asked:

> THE COURT: . . . Are you pleading guilty because you did, in fact, do the acts charged in Count 7 of the Indictment?
>
> THE DEFENDANT: Yes, I am.
>
> THE COURT: Do you know of any reason why the court should not accept your plea of guilty?

-4-

THE DEFENDANT: No, sir.

* * * *

THE COURT: Do you feel that you have had sufficient time to discuss this matter fully with your attorney before entering your plea of guilty today?

THE DEFENDANT: Yes, sir.

* * * *

The court then entered into a dialogue along similar lines with the defendant's attorney. Thereafter, the government recited the factual basis for the plea.

After discussion between the attorneys, the defendant and the court, the court accepted the defendant's plea of guilty:

THE CLERK: How do you plead to Count 7 of the Indictment, guilty or not guilty?

THE DEFENDANT: Guilty.

THE CLERK: You may be seated.

THE COURT: The court having questioned the defendant Brian Hoyle and his counsel in his offer of a plea of guilty, the defendant and his counsel having advised the court they have conferred concerning the offer of the plea of guilty and all aspects of the charges against the defendant, and any defenses he may have, and the court having observed the defendant in making his answers, and his demeanor and manner, his intelligence and attitude, and the court having observed the defendant does not appear to be under the influence of any medicine, drugs or other substance that may

-5-

affect his judgment in any matter; the court finds that the offer of a plea of guilty of the defendant to Count 7 of the Indictment has a factual basis, is free of any coercive influence of any kind, is voluntarily made with full knowledge of the charge against him and the consequences of his plea, and there have been no promises of any kind made by anyone, and no threats or coercion have been exerted upon the defendant in any manner.

* * * *

It is therefore ordered the plea of the defendant Brian Hoyle to Count 7 of the Indictment be accepted and entered.

Thereafter, the probation department learned of a prior conviction for possession of marijuana with intent to distribute. Based on that new fact, the defendant would be classified as a career criminal and would receive a sentence of substantially longer than the agreed-upon 48 months. Therefore, the defendant withdrew his January 28 guilty plea.

On May 1, 1998, the defendant pled guilty a second time. The colloquy was much the same as it was on January 28, and the government again laid out the factual basis for the plea agreement:

Had this case gone to trial against the defendant, Your Honor, the United States would have introduced evidence including witness testimony, electronic surveillance, tapes, as well as records from various businesses.

In essence, Judge, the trial would have boiled down to a tape [that] would be played in which a conversation on June 9, 1992 which occurred inside Dillon's Tavern between Rex Cunningham and Thomas Ferris.

Thomas Ferris asked Mr. Cunningham to have individuals collect by use of an extortionate means, that being fear, threats, intimidation and unnatural violence.

Mr. Ferris wanted money collected from four individuals that had contracted with him in Mr. Ferris' electrical contracting business.

Mr. Ferris and Mr. Cunningham discussed the names of the individuals, their addresses, and how best to contact them. There was discussion with regards to how each of the individuals should be contacted, and what means, extortionate means should be used to force the individuals to collect.

Two days later also occurring in Dillon's Tavern on June 11, 1992, the defendant before you today, Brian Hoyle, was intercepted in a conversation with Rex W. Cunningham, Jr. in which Mr. Cunningham discussed the four individuals that two days earlier Mr. Ferris had requested Mr. Cunningham to use his expertise in collecting from. During that conversation Mr. Cunningham and Mr. Hoyle discussed exactly what types of extortionate means would be used to collect from those four individuals.

There was a third conversation on July 21, 1992 in which Mr. Ferris again came into Dillon's and asked Mr. Cunningham what was going on with the collection efforts, and Mr. Ferris hadn't gotten any money yet. And Mr. Cunningham said he was going to talk to

-7-

Brian Hoyle about it, and get him on it right away.

Each of the individuals listed in the Indictment would testify they were either called or visited on one occasion by individuals saying that the named victim in the indictment had to pay the person they owed the money to and specific amounts were mentioned, although Mr. Ferris' name was not mentioned. One of the victims, Diane Taylor, would identify an individual who looked like the defendant Brian Hoyle and he and another individual got into a car registered to Brian Hoyle.

In addition a search warrant was executed of Mr. Cunningham's person, his home, and his vehicle, and in his vehicle were found three index cards which had the names of the four individuals who Mr. Ferris sought to have collected from, including their addresses and their home phone numbers.

* * * *

. . . That would be the evidence in sum that the government would have relied upon had it gone to trial.

This time, the government asked for a sentence at the "low end of the guideline range." The defendant pled guilty to count seven of the Indictment for the second time and the court, again, accepted his plea after questioning the defendant as he had done at the prior plea of guilty. See supra. The defendant was ultimately sentenced to 151 months in prison and three years of supervised release.

The defendant did not file a notice of appeal. He instead filed a pro se motion pursuant to 28 U.S.C. § 2255. The district court granted the motion for the sole purpose of appealing his sentence and directed the clerk to file a notice of appeal on the defendant's behalf.

On appeal, the defendant argues that the district court violated Rule 11(f) of the Federal Rules of Criminal Procedure by entering judgment upon the defendant's plea of guilty without a proffer of evidence that the defendant had participated or conspired to collect or attempt to collect on an "extension of credit." The defendant argues that he was not adequately informed by the court of the nature of the charge to which he was pleading guilty as required by Rule 11(c). He further contends that the sentencing guidelines were erroneously applied. We will address each of these points in turn.

**II.**

We first address the defendant's contention that the district court violated Rule 11(f)[1] because the factual basis for the guilty plea was insufficient. The defendant did not challenge his guilty plea in his criminal case and did not do so

---

[1] Rule 11(f) states: **"Determining Accuracy of Plea.** Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

in his § 2255 petition. Because he raises this Rule 11(f) claim for the first time on appeal, we review it only for plain error. United States v. Gandia-Maysonet, 227 F.3d 1, 4 (1st Cir. 2000). Under a plain error standard, the burden is on the defendant who is attacking his own plea to show that the outcome would likely have been different if the error had not occurred. Plain error "requires not only an error affecting substantial rights but also a finding by the reviewing court that the error has 'seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'" Id. at 5 (alteration in original) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

We have held that:

[t]he "fairness, integrity or reputation" plain-error standard is a flexible one and depends significantly on the nature of the error, its context, and the facts of the case. In the taking of a guilty plea under Rule 11, the critical concerns are that the plea be voluntary and that there be an admission, colloquy, proffer, or some other basis for thinking that the defendant is at least arguably guilty.

Gandia-Maysonet, 227 F.3d at 6 (internal citations omitted).

The defendant argues that "the government proffered no evidence that [the] debt the defendant attempted to collect arose from an 'extension of credit.'" He contends that the money the customers owed to Ferris for his electrical

-10-

contracting work was not an "extension of credit" within the meaning of 18 U.S.C. § 894(a)(1). Section 894(a)(1) makes it illegal to "knowingly participate[] in any way, or conspire[] to do so, in the use of any extortionate means . . . to collect or attempt to collect any extension of credit." An extension of credit is defined in 18 U.S.C. § 891(1): "To extend credit means to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred."

The defendant contends that there was no extension of credit within the meaning of the statute because Ferris neither made a loan to his customers nor did he agree to defer payment for his services. The defendant cites myriad cases from other circuits to support his contention that in order to establish an extension of credit, there must be an agreement, tacit or express, to defer payment. See, e.g., United States v. Garcia, 135 F.3d 951, 955 (5th Cir.), cert. denied, 524 U.S. 961 (1998) (marijuana dealer gave buyer time to pay balance of payment, while indicating that interest was accruing daily); United States v. Cassano, 132 F.3d 646, 650-51 (11th Cir.), cert. denied, 525 U.S. 840 (1998) (agreement to defer repayment of embezzled money); United States v. Bufalino, 576 F.2d 446, 452

-11-

(2d Cir. 1978) (defrauded jeweler accepted "lip service" from the defrauder and by doing so, made an "extension of credit"); United States v. Annerino, 495 F.2d 1159, 1166 (7th Cir. 1974) (unauthorized use of credit cards and an agreement whereby repayment was deferred); United States v. Briola, 465 F.2d 1018, 1021 (10th Cir. 1972) (fraudulent bets with at least tacit agreement).

We have held, however, that "[s]ection 891(1), defining 'extension of credit,' is very broad in its application and is not confined to what is commonly known as a 'loan.'" United States v. Sedlak, 720 F.2d 715, 720 (1st Cir. 1983); see also United States v. DiPasquale, 740 F.2d 1282, 1288 (3d Cir. 1983) ("The definition of an extension of credit . . . was generously drafted. . . . [and] has been even more generously construed."). In Sedlak, we also held that the victim's belief that he owed money was not dispositive in the determination of whether there was an extension of credit:

> The fact that [the victim] did not believe that he owed [the defendant/creditor] any money is not dispositive of the issue. See United States v. Cheiman, 578 F.2d 160 (6th Cir. 1978) . . . , where the court found an extension of credit existed even when the victim was forced to sign an agreement to pay a false claim.

Sedlak, 720 F.2d at 720.

Likewise, the Third Circuit held that "[t]he debt or claim may be 'acknowledged or disputed, valid or invalid'. . . . It may even be wholly fictitious." DiPasquale, 740 F.2d at 1287 (internal citations omitted). It continued: "[T]he agreement to defer repayment may be 'tacit or express'. A tacit agreement may be implied from the circumstances surrounding the creation of the debt." Id. (internal citations and footnote omitted). The court concluded:

> [U]nder section 891(1), an agreement to defer the repayment of a debt may be implied from the debt, even if the debt is wholly fictitious. When a self-styled creditor appears before his 'debtor' and demands satisfaction, the creditor posits both a debt and the prior deferral of its repayment. We believe that the definition of an extension of credit encompasses this type of transaction.

Id.

We find that there was an extension of credit in this case. It is logical to infer, at the very least, that there was a tacit agreement to defer repayment of a debt. Ferris provided electrical contracting services to the victims. The parties did not enter into a contract prior to the rendering of the services. Once the services were provided and immediate payment was not demanded, an extension of credit was established. It would be unreasonable for the victims to have assumed that the services were provided by Ferris at no cost. It would also have

-13-

been unreasonable for them not to have expected a bill in due course. In fact, bills were later presented to the customers and eventually payment was demanded. When Ferris did not receive payment, he contacted Cunningham for help in collecting the debt. Cunningham, in turn, assigned the task of collecting to the defendant.

The defendant relies heavily on three cases from other circuits, see United States v. Wallace, 59 F.3d 333 (2d Cir. 1995); United States v. Stokes, 944 F.2d 211 (5th Cir. 1991); United States v. Boulahanis, 677 F.2d 586 (7th Cir. 1982). These cases, however, require more than is required in our decision in Sedlak and the Third Circuit's decision in DiPasquale and we decline to give them much weight in this case. We need not reach the question of whether we adopt the Third Circuit's rationale at this time because we find sufficient indicia of agreement contained in the current facts to conclude that an agreement to defer payment of the debts existed. We find that there was a factual basis to support the charge that there was an extension of credit and we hold that the district court did not violate Rule 11(f).

We next address the defendant's contention that the district court violated Rule 11(c)[2] of the Federal Rules of Criminal Procedure because it failed to explain the meaning of "extension of credit," and therefore, he argues, the defendant was not instructed on the nature of the charge. We find this argument unpersuasive.

Rule 11 requires that a defendant who pleads guilty must understand the nature of the charge. McCarthy v. United States, 394 U.S. 459, 466 (1969). Understanding the charge is one of Rule 11's "core concerns" and a violation thereof mandates that the plea be set aside. United States v. Cotal-Crespo, 47 F.3d 1, 4 (1st Cir. 1995). We do not apply a "talismanic test," but rather review the totality of the circumstances of the hearing. Id. We have held:

> What is critical is the substance of what was communicated by the trial court, and what should reasonably have been understood by the defendant, rather than the form of the communication. At a minimum, Rule 11

---

[2] Rule 11(c) states in pertinent part:

**Advice to Defendant.** Before accepting a plea of guilty . . . , the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands the following:

(1) the nature of the charge to which the plea is offered . . . .

-15-

> requires that the trial court address the defendant personally in open court to ascertain that his plea is "voluntary and intelligent."

Id. at 4-5 (internal citations omitted). We continued: "In the absence of a total failure to address one of Rule 11's core concerns, the question is whether irregularities in the plea-taking proceeding affected the defendant's 'substantial rights.'" Id. at 5 (citation omitted).

We have held that the factors that may be used to determine whether a plea should be withdrawn include: (1) the defendant's reason for the withdrawal; (2) the timing of the request; (3) whether there was a plea agreement; and (4) the defendant's assertion, or lack thereof, of innocence. United States v. Alvarez-Del Prado, 222 F.3d 12, 15 (1st Cir. 2000). In this case, there was a plea agreement; in fact, there were two plea agreements. The defendant argues that his plea should be withdrawn because he did not understand the nature of the charge. The defendant did not indicate in his first Rule 11 hearing that he did not understand the nature of the charge, and did not do so in his second Rule 11 hearing. Likewise, the defendant has never asserted his innocence, neither at the first Rule 11 hearing nor at the second Rule 11 hearing. He did not assert his innocence in his § 2255 petition and has still not done so before us.

-16-

After careful review of the record, we find no violation of the Rule 11 colloquy and find no reason to disrupt the defendant's guilty plea. We note that the district court read count seven of the indictment to the defendant at both Rule 11 hearings, and the defendant never indicated any confusion with the charge read to him. At both Rule 11 hearings, the defendant answered in the affirmative when asked if he actually committed the offense charged. The government read a detailed account of the facts and the defendant never indicated any confusion. The defendant acknowledged to the court that he was counseled by an attorney; in fact, he had two different attorneys for his two Rule 11 hearings. Ultimately, the defendant pled guilty twice to the same charged offense. We find that the defendant was well aware of the nature of the offense charged and knowingly and voluntarily pled guilty.

Finally, the defendant argues that he was the victim of ineffective assistance of counsel when his attorney failed to request a downward departure pursuant to U.S.S.G. § 4A1.3 because the defendant's "assigned criminal history category significantly overrepresents the seriousness of his past criminal conduct and the likelihood of recidivism."[3] The

---

[3] In his brief, the defendant also claimed that he was the victim of ineffective assistance of counsel because his attorney did not seek a "role in the offense" reduction. This

-17-

defendant did not address this precise argument in his § 2255 petition and does so for the first time on appeal to us.  We have repeatedly held that

> "fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) (citing cases).  We have allowed exceptions "only when the critical facts are not in dispute and the record is sufficiently developed to allow reasoned consideration of the claim." Id.

United States v. Bierd, 217 F.3d 15, 23-24 (1st Cir. 2000).  It is quite unlikely that the argument has been adequately preserved and even on appeal it is advanced only in a minimal way by a few sentences at the very end of the opening brief.

Nevertheless, even if the issue were adequately preserved or could be raised under a plain error standard, there is no basis for us on the present record to conclude that counsel was ineffective for failing to raise the claim and still less that there is any basis under the Strickland test for believing that the result would have been different if a downward departure had been sought.  It is true that "a sentencing court may invoke § 4A1.3 to depart downward from the career-offender category if it concludes that the category

argument has since been withdrawn.

-18-

inaccurately reflects the defendant's actual criminal history."
United States v. Lindia, 82 F.3d 1154, 1165 (1st Cir. 1996).
But nothing yet put before us shows such a departure motion had
promise.  On the contrary, the defendant not only had two prior
felony convictions but committed the final charged offense only
a year-and-a-half after he was released from prison but while
still on parole for federal drug trafficking.

### III.

For the reasons set forth above, we find that the
district court did not err in accepting the defendant's guilty
plea
or when sentencing him.

**Affirmed.**