Air Line Pilots v. Guilford Trans.    CV-04-331-JD  12/06/04
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Air Line Pilots Association,
International

     v.                              Civil No. 04-331-JD
                                     Opinion No. 2004 DNH 179
Guilford Transportation
Industries, Inc. *et al.*


                          O R D E R

     Plaintiff Air Line Pilots Association, International

("ALPA") has moved for reconsideration of this court's order of

October 20, 2004, insofar as it closed this case following the

entry of an injunction against the defendants pursuant to the

Railway Labor Act, 45 U.S.C. § 152 (the "RLA").  ALPA has also

objected to the magistrate's report and recommendation of

November 8, 2004, recommending the denial of its "Motion for

Order to Show Cause Why Defendants Should Not Be Held in

Contempt" of the injunction for performing certain charter

flights during October, 2004.  The defendants have filed an

objection to the motion for reconsideration and a response to the

objection to the report and recommendation.


                               1

## Background

The background facts giving rise to this litigation are extensively set forth in the magistrate's September 17, 2004, report and recommendation on ALPA's "motion for temporary restraining order and preliminary injunction" (document no. 34) and the court's October 13, 2004, order adopting it (document no. 61) and therefore will be repeated here only to the extent they bear upon the pending matters. Both ALPA's complaint and the accompanying motion sought to enjoin the defendants "from utilizing Boston-Maine or any other alter ego operation to operate B-727s or other large jet aircraft for the purpose of transferring work and work opportunities of the Pan Am flight crewmembers . . . ." Compl. at 19, ¶¶ 1-2; Prop. TRO at 4, ¶ 1.

The complaint also requested orders requiring Pan Am "to deal with ALPA in good faith and in a timely fashion with respect to its obligation to process all grievances in a prompt manner and, when appropriate, to submit such grievances to final and binding arbitration pursuant to the procedures set forth in the CBA" and "to pay its share of arbitrators' bills relating to Pan Am-ALPA System Board grievances in a timely manner and to comply

2

with and implement all awards of the System Board." Compl. at 20, ¶¶ 4-5. The complaint sought this relief on the ground that Pan Am was violating 45 U.S.C. §§ 152, First and Second, and 184 by systematically refusing to process grievances submitted by flight crewmembers. Id. ¶¶ 14-15. Specifically, ALPA alleges that Pan Am has stalled in the selection of arbitrators and hearing dates for these grievances, has failed or refused to pay the arbitrators' bills in a timely fashion, and has refused to implement arbitration awards against it, forcing ALPA to bring suit in federal court to enforce the awards in at least two instances. Id. ¶¶ 16-21. ALPA did not seek any relief against these alleged wrongs in its "motion for temporary restraining order and preliminary injunction," however.

The court referred that motion to the magistrate, who conducted an evidentiary hearing before issuing a report and recommendation on September 17, 2004. In relevant part, the magistrate proposed that the defendants be ordered to "[r]efrain from using Boston-Maine . . . to operate B-727s or any other large jet aircraft in service traditionally performed by Pan Am

3

and that Pan Am is capable of performing." R & R (Sept. 17, 2004) at 31. Only the defendants filed an objection to the R & R, asserting, inter alia, that the recommended injunction was not "sufficiently specific as to what action [Boston-Maine] may and may not take." Def. Obj. at 47. In its response to the defendants' objection, ALPA conceded that the "terms 'service traditionally performed by Pan Am and that Pan Am is capable of performing' may be somewhat confusing or imprecise." Pl. Resp. Def. Obj. at 37.

Accordingly, ALPA suggested that the court simply excise the "confusing" language because "the work 'traditionally' and exclusively performed by Pan Am pilots was large jet aircraft operations, while Boston-Maine performed only small turboprop operations" before the Department of Transportation authorized it to fly 727s in July, 2004. Id. at 37-38. The court declined to do so, reasoning that ALPA's proposal "actually broadens the restrictions on Boston-Maine beyond those necessary to maintain the status quo. Preventing Boston-Maine from operating any

'B-727s or other large jet aircraft' does not necessarily reflect the state of things prior to the onset of the present dispute." Order (Oct. 13, 2004) at 26.

In response to the defendants' additional objection that the magistrate had phrased the recommended injunction "as permanent relief, not as a temporary injunction," the court directed them to show cause by October 18, 2004, "why there should be any further proceedings in this matter in this court" and ALPA to respond to any such showing by October 21, 2004. Id. at 29. Because neither party had made any submission on the subject as of October 20, 2004, the court declared the injunction "the final resolution of the matter raised in this case" in an order issued that day. In that same order, the court denied ALPA's October 19, 2004, motion to clarify the injunction, finding no jurisdiction to interpret it because the defendants had already appealed the injunction to the First Circuit.

On October 27, 2004, ALPA filed a "motion for order to show cause why defendants should not be held in contempt" of the injunction for using a B-727 to perform charter flights through Boston-Maine on October 15, 17, and 23, 2004. Pursuant to 28

5

U.S.C. § 636(b)(1)(b), the court referred the motion to the magistrate for a hearing, which took place on November 5, 2004. The magistrate found that Pan Am had no captain available to make the October 17 flight and that the airline was therefore not "capable of performing" that service within the meaning of the injunction. R & R (Nov. 8, 2004) at 3. The magistrate also found that the flights of October 15 and 23 were "the result of Boston-Maine's independent business development efforts through a charter sales representative who was not formerly employed by Pan Am" and "performed on behalf of customers with whom Pan Am had not done business." Id. Because the magistrate read the injunction to allow Boston-Maine to use its own "large jet aircraft to offer charter service independently obtained through its own efforts," he recommended that ALPA's motion be denied. Id. at 4. ALPA filed a timely objection to the R & R.

## Discussion

### I.   ALPA's Objections to the R & R

Because the magistrate heard ALPA's motion pursuant to 28 U.S.C. § 636(b)(1)(b), the court conducts de novo review of the

6

report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). De novo review requires the court to "give fresh consideration to those issues to which specific objections have been made." 12 Charles Alan Wright et al., Federal Practice & Procedure § 3072.2, at 374 (2d ed. 1997) (internal quotation marks and footnote omitted); accord Gioiosa v. United States, 684 F.2d 176, 178 (1st Cir. 1982). To prevail on a motion for contempt, the complaining party must establish by clear and convincing evidence that its adversary violated the order in question. Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 77 (1st Cir. 2002); AccuSoft Corp. v. Palo, 237 F.3d 31, 47 (1st Cir. 2001). Furthermore, "any ambiguities or uncertainties in such a court order must be read in a light favorable to the person charged with contempt." Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991); see also Gilday v. Dubois, 124 F.3d 277, 286 (1st Cir. 1997).

ALPA objects to the magistrate's finding that Pan Am had not previously done business with the customers Boston-Maine flew on the October 15 and 23 charters, arguing that "the record is totally silent on this issue" except for defense counsel's

7

representation at the motion hearing that those flights served new customers.[1]  Pl. Obj. at 16.  In the court's view, however, the declaration of Boston-Maine's manager of charter sales provides sufficient proof that he secured these customers by "utilizing [his] prior knowledge of and contacts in the aircraft charter business," rather than by poaching them from Pan Am. Decl. of Vishal P. Popat ¶¶ 4-7.  Furthermore, ALPA had the burden of coming forward with clear and convincing evidence to support the theory that the defendants violated the injunction by flying former Pan Am charter customers on the Boston-Maine 727.[2] See, e.g., AccuSoft, 237 F.3d at 49.  This burden cannot be satisfied by pointing to the absence of proof that the flights

---

[1]ALPA does not challenge the magistrate's finding that Pan Am was not capable of performing the October 17 flight.

[2]In its objection, ALPA complains that application of the rule that the moving party bears the burden of proving contempt amounts here to "a highly unfair way to allocate the burden of proof, because . . . there is no way ALPA can know either who all of Pan Am's previous customers were or who all of Boston Maine's current customers are."  Pl. Obj. at 16.  This information, however, would seem to be easily ascertained by discovery into the business records of Pan Am and Boston-Maine.  Because ALPA did not seek any such discovery in aid of its motion, its gripe is largely about a problem of its own making.

served new customers.  Accordingly, the court has no reason to reject the magistrate's finding in this regard.

ALPA also objects to the magistrate's interpretation of the injunction to permit the charter flights at issue, arguing that "<u>any</u> charter flight performed by Boston Maine using a B-727 aircraft is a 'service traditionally performed by Pan Am' that is prohibited by the injunction."  Pl. Obj. at 2.  This argument essentially reads the phrase "traditionally performed by Pan Am and that Pan Am is capable of performing" out of the injunction, resulting in language nearly identical to that ALPA sought in its motion for injunctive relief but which the magistrate did not use in his recommended order.  <u>Compare</u> Prop. TRO at 4, ¶ 1 <u>with</u> R & R (Sept. 17, 2004) at 31.  Despite this fact, ALPA did not file any objections to the R & R, instead waiting until its response to the defendants' objections to urge that the injunction extend to all large-jet flying by Boston-Maine.

"[A] party's failure to assert a specific objection to a magistrate's report and recommendation irretrievably waives any right to review by the district court . . . ."  <u>Santiago v. Canon</u>

9

U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998); see also Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980). Addressing the issue in response to an adversary's objection to the report and recommendation does not preserve it. Henley Drilling Co. v. McGee, 36 F.3d 143, 150 n.17 (1st Cir. 1994). Thus, because ALPA did not object to the magistrate's proposal that the phrase "traditionally performed by Pan Am and that Pan Am is capable of performing" appear in the injunction, it cannot make a de facto objection to the language now by asking the court to apply the order without that express limitation.

In any event, even if ALPA's argument could be considered at this stage, it is unpersuasive. Although ALPA offers reasons for rejecting the magistrate's interpretation, e.g., it is "contrary to the purpose and rationale of the injunction" and "would effectively render the injunction unenforceable," Pl. Obj. at 14, it fails to propose any other reading consistent with the injunction's plain language. In the First Circuit, the interpretation of a court order for the purpose of determining contempt remains primarily "an examination of that document's text," ensuring that the party facing the sanction was "'able to

10

ascertain from the four corners of the order precisely what [was] forbidden.'" Goya, 290 F.3d at 76 (quoting Gilday, 124 F.3d at 282). The text of the injunction prohibits Boston-Maine from operating 727s only "in service traditionally performed by Pan Am and that Pan Am is capable of performing."[3] The order simply cannot be read in a manner that erases those words from the page.

ALPA also contends that the flights Boston-Maine performed in alleged contempt of the injunction do constitute "service traditionally performed by Pan Am" because the evidence supporting its motion "showed that Pan Am had historically performed charters of all kinds." Pl. Obj. at 7. More accurately, the testimony referenced in ALPA's objection shows that, over some period, Pan Am regularly performed track charters to Mexico and the Dominican Republic for a Boston tour company and also flew ad hoc charters "for performing artists, dance

---

[3]ALPA also suggests that the flights at issue violate the status quo provision of the injunction because Boston-Maine was not performing any 727 service as of July 15, 2004. The provision, however, requires only that the defendants reinstate "the status quo rates of pay, rules and working conditions" of the Pan Am flight crewmembers as of that date. ALPA does not sufficiently explain how the flights at issue amount to a change in any of those respects.

troops [*sic*], things like that."[4]  Tr. Show Cause Hrg. at 18-19.
The witness could not identify any other "charter service or
vacation package" that Pan Am had serviced on a regular basis in
the past year.  Id. at 31.

As the magistrate properly found, however, the flights of
October 15 and 23 were ad hoc charters for tour companies with
whom Pan Am had not previously done business.  ALPA's objection
does not cite to any evidence that Pan Am has ever performed ad
hoc charters for tour companies, let alone that it has
traditionally done so.  Furthermore, the fact that Pan Am once
flew track charters for a limited number of tour companies does
not establish a tradition rich enough to encompass the flights at
issue here.[5]  Cf. B'hd of Locomotive Eng'rs v. Springfield
Terminal Ry., 210 F.3d 18, 33 (1st Cir. 2000) (upholding RLA
injunction against "[t]he exact switching work previously

---

[4]Pan Am also transported detainees for the United States
Marshal and military personnel for the Department of Defense.
Tr. Show Cause Hrg. at 18.

[5]ALPA also relies on the parties' earlier stipulation that
Pan Am "operates charters."  Pl. Obj. at 2.  In the court's view,
this bald statement offers no insight into Pan Am's traditional
services beyond that suggested at the show cause hearing.

12

performed by Union workers" to non-union affiliate); <u>Burlington</u>
<u>N. R.R. v. United Transp. Union</u>, 862 F.2d 1266, 1276 (7th Cir.
1988) (upholding RLA injunction against non-unionized performance
of assertedly new service "covering exact same geographic market
as currently serviced" by unionized affiliate and recognizing
that "[i]f a carrier truly developed new business, quite apart
from that already performed by employees," using non-unionized
affiliate to serve business would not violate RLA).  The court
adopts the magistrate's conclusion that the October 15 and 23
flights did not amount to "service traditionally performed by Pan
Am" within the meaning of the injunction.

II.  ALPA's Motion for Reconsideration

ALPA has moved for reconsideration of the October 20 order
on the grounds that the union "sought relief in its Complaint,
but did <u>not</u> seek relief by way of Temporary Restraining Order or
Preliminary Injunction, related to Pan Am's systematic failure to
process grievances and comply with arbitration awards concerning
such grievances."  Mot. for Recons. ¶ 5.  Although ALPA's motion
directs the court to portions of its complaint demanding a

13

declaratory judgment and "monetary relief" as remedies for this alleged conduct, ALPA states in its reply brief that "the relief it requests . . . is primarily injunctive." Repl. at 9. Specifically, ALPA seeks to compel Pan Am "to fulfill its obligation to process all grievances in an expeditious manner, and where appropriate, to submit such grievances to the system board" and "to implement all system board awards promptly." Id. ALPA also wants the court "to maintain jurisdiction over the dispute resolution process, such that any non-compliance could be addressed swiftly." Id.

ALPA's complaint seeks this relief on the basis of events that have already occurred, alleging that "unless enjoined, the [d]efendants will continue the . . . unlawful course of conduct." Compl. ¶ 46. In fact, two of the system board awards which the complaint cites as justification for an injunction have been litigated through other actions, resulting in orders to comply with the awards.[6] Although the complaint also references twelve

_____

[6]Although the complaint alleges that the defendants have yet to implement another particular award granted by the system board, ALPA recognizes that the proper mechanism for enforcing an award is an action brought pursuant to 45 U.S.C. § 153(p). Repl. at 7. This is not such an action.

14

pending grievances, ALPA states in its reply brief that it does not "seek to involve the [c]ourt in resolving the merits" of any of them. Repl. at 4.

As this court explained to ALPA in the context of a previous lawsuit, "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by continuing, present adverse effects.'" Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 855 F. Supp. 27, 33 (D.N.H. 1993) (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)). In Precision Valley, ALPA sought an injunction restraining a carrier from discharging or threatening to discharge pilots in retaliation for union activities. Id. Although the carrier had stated its intention to terminate a group of pilots unless the union withdrew a pending grievance, the carrier later reinstated them. Id. at 29. This court ruled, sua sponte, that the reinstatement deprived the court of subject-matter jurisdiction over ALPA's request for an injunction, given the lack of evidence of "a real and immediate threat ALPA . . . is currently being harmed . . . ." Id. at 33.

15

Here, as in Precision Valley, the conduct ALPA attributes to the defendants as the basis of its claim for injunctive relief has already occurred.[7] It no longer presents a threat to ALPA's interests. Thus, ALPA's complaint fails to present a case or controversy within the court's subject matter jurisdiction. Id. The dismissal of ALPA's complaint, to the extent it seeks an order compelling the expeditious processing of grievances and the prompt implementation of system board awards, was therefore proper. See, e.g., McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004). Accordingly, ALPA's motion for reconsideration of the order of October, 20, 2004, closing the case despite the pendency of that request for relief, is denied.

---

[7]The complaint suggests that the defendants have stalled in selecting arbitrators or setting hearing dates for grievances now pending before the system board, but fails to explain in its briefing how this court would have jurisdiction to speed the progress of these matters. Any such relief would seem to be a matter for the board to consider in the first instance. See Andrews v. Louisville & Nashville R.R., 406 U.S. 320, 325-26 (1972).

16

## Conclusion

For the foregoing reasons, the court adopts the magistrate's report and recommendation of November 8, 2004 (document no. 86) over ALPA's objections (document no. 95) and ALPA's motion for reconsideration (document no. 76) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

December 6, 2004

cc:  R. Matthew Cairns, Esquire
     Julie P. Glass, Esquire
     Eric L. Hirschhorn, Esquire
     Marie M. McPartlin, Esquire
     Marcus C. Migliore, Esquire
     William G. Miossi, Esquire
     Joseph E. Schuler, Esquire
     Andrew W. Serell, Esquie

17