UNITED STATES of America

v.

Concepcion PICCIOTTO, Appellant.

No. 87-3084.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 6, 1989.
Decided May 23, 1989.

Mark A. Venuti, Washington, D.C., appointed by the Court, for appellant.

Sharon A. Cohen, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Michael W. Farrell, Asst. U.S. Atty., and Joseph E. diGenova, U.S. Atty.,* Washington, D.C., also entered appearances for appellee.

Before MIKVA, EDWARDS, and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Appellant Concepcion Picciotto was convicted of violating a rule promulgated by the United States Park Service. She was given a suspended sentence and probation. We reverse. The case turns on the ability of a government agency to exempt itself from the rulemaking requirements of the Administrative Procedure Act ("APA"). We find that the APA, in balancing the goals of agency efficiency and open, informed government, permits agencies to bypass the established procedures only under certain express circumstances. The way in which the Park Service promulgated the rule under which appellant was convict-

* At the time brief was filed.

ed precludes the Park Service from relying on one of the APA's express exceptions. Therefore, the rule was null and void.

## I. BACKGROUND

Since 1981, Concepcion Picciotto has engaged in a twenty-four-hour-a-day vigil on the sidewalk bordering Lafayette Park, across the street from the White House, to warn the public about the dangers of nuclear war. On July 1, 1987, Officer Brad Hewick of the United States Park Police arrested Ms. Picciotto for violating a park regulation prohibiting the storage of property at her demonstration site in Lafayette Park in an amount greater than that reasonably required for a twenty-four hour demonstration.

After a bench trial, Judge Jackson found Ms. Picciotto guilty as charged and gave her a ten-day suspended prison sentence and six months unsupervised probation. Ms. Picciotto appeals.

## II. DISCUSSION

The Park Service has promulgated regulations governing activity in all national capital region parks, which include parks in the District of Columbia and parts of Virginia and Maryland. *See* 36 C.F.R. § 7.96 (1988). Subsection (g) imposes certain restrictions on demonstrations and special events. Some of the restrictions apply to all parks in this area; some to specific parks. Lafayette Park is one of the sites for which specific restrictions have been adopted.

Subsection (g) also contains, in addition to defined regulations, an open-ended provision, as follows:

A permit may contain additional reasonable conditions and additional time limitations, consistent with this section, in the interest of protecting park resources, the use of nearby areas by other persons, and other legitimate park value concerns.

36 C.F.R. § 7.96(g)(5)(xiii) ("clause 13"). This provision, along with the rest of § 7.96, was properly adopted pursuant to the APA's notice and comment requirements, *see* 5 U.S.C. § 553 (1982).

The Regional Director of National Capital Parks adopted, pursuant to clause 13, a number of "additional conditions" that were made generally applicable to all demonstrators in Lafayette Park. Appellant was convicted for violating the first of these:

Property may not be stored in the Park, including, but not limited to construction materials, lumber, paint, tools, household items, food, tarps, bedding, luggage, and other personal property. (In this regard, certain personal property that is reasonably required by a demonstration participant during any one 24–hour period will not be considered to violate this permit condition. Such property may include items such as a coat, a thermos, and a small quantity of literature. However, the quantity of these items may not exceed that which is reasonably necessary in a 24–hour period.)

Appellant received a copy of these "additional conditions" from Supervisory Park Ranger Philip Walsh, but the Park Service did not publish a general notice of proposed rulemaking in the Federal Register and neither appellant nor the general public was given an opportunity to comment.

■ The Park Service, like any other government agency, must conform to the APA's notice and comment requirements when engaging in any informal agency rulemaking procedures, unless properly relying on an exception. A rule which is subject to the APA's procedural requirements, but was adopted without them, is invalid. *See Chamber of Commerce v. Occupational Safety and Health Administration,* 636 F.2d 464, 470–71 (D.C.Cir. 1980). Certainly, a criminal prosecution founded on an agency rule should be held to the strict letter of the APA.

The Park Service interprets clause 13 as granting it the authority to impose new substantive restrictions uniformly on all demonstrators in any national capital region park, without engaging in notice and comment procedures. It claims that since clause 13 went through notice and comment, the new restrictions do not need to. In essence, the Park Service is claiming

that an agency can grant itself a valid exemption to the APA for all future regulations, and be free of APA's troublesome rulemaking procedures forever after, simply by announcing its independence in a general rule. That is not the law. Such agency-generated exemptions would frustrate Congress' underlying policy in enacting the APA by rendering compliance optional. The statute's direct mandate requires notice and comment procedures for any rule that does not fall within certain express exceptions. *See* § 553(b)–(e). The Park Service cannot construct its own veto of Congressional directions. *See Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981).

■ Furthermore, the Park Service's reading of clause 13 is implausible as well as unlawful. The provision specifies that "a permit" may contain additional conditions and time limitations. By its own terms, the language allows the Park Service only to attach specific limitations to individual permits as part of its permit-granting procedure, not to adopt rules applicable to the general public. Since the APA does not specify procedures for informal agency decisions such as whether or not to permit a particular demonstration, the Park Service would not be acting inconsistently with the APA by announcing its procedures for approving permits on individualized terms. Thus the regulation, read as written, would not be inconsistent with the APA: the Park Service could adjust permits to the specific circumstances of individual demonstrations, but the limitations attached to any given permit would be reviewable under the APA's arbitrary and capricious standard. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416–17, 91 S.Ct. 814, 823–24, 28 L.Ed. 2d 136 (1971).

We need not, however, decipher the correct reading of clause 13. The agency is entitled ordinarily to construe its own regulation. *Stuart–James Co. v. Securities and Exchange Commission*, 857 F.2d 796, 800 (D.C.Cir.1988). The issue before this court is whether a conviction based on a violation of the Lafayette Park storage rule, adopted pursuant to clause 13 but without notice and comment, can stand. We find that clause 13 does not provide a basis for upholding the conviction, because clause 13 either does not authorize the imposition of general rules such as the Lafayette Park storage restriction, or it attempts to and is therefore invalid.

■ The APA does provide for exemptions from its notice and comment requirements. But we note at the outset that the APA's notice and comment exemptions must be narrowly construed. *American Hospital Association v. Bowen*, 834 F.2d 1037, 1044–45 (D.C.Cir.1987) ("In light of the importance of these policy goals of maximum participation and full information, we have consistently declined to allow the exceptions itemized in section 553 to swallow the APA's well-intentioned directive.").

■ The Park Service argues that the "additional conditions" are exempt as "interpretive", rather than "substantive" rules. *See* 5 U.S.C. § 553(b)(A), (d)(2). The task of differentiating between substantive and interpretive rules is not always an easy one; in general, substantive rules create law, whereas interpretive rules clarify existing law. This court has previously found agency rules explaining ambiguous terms in statutes and regulations to be interpretive. *See, e.g., Gibson Wine Co. v. Snyder*, 194 F.2d 329, 332 (D.C.Cir.1952) (finding that a rule requiring wine derived wholly from boysenberries to be labeled boysenberry wine rather than blackberry wine was interpretive of the statutory requirement that fruit wine was to carry the name of the fruit from which it was derived); *American Postal Workers Union v. United States Postal Service*, 707 F.2d 548, 559–60 (D.C.Cir.1983) (finding that the postal service's new method of calculating retirement benefits was interpretive because adoption of the method turned on the agency's understanding of the statutory term "average pay"), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984). We have also held rules that merely restate

existing duties, rather than creating new duties, to be interpretive. *See, e.g., Cabais v. Egger,* 690 F.2d 234, 238 (D.C.Cir.1982) (finding directives from the Secretary of Agriculture interpretive because they merely recommended actions required under a federal tax law); *General Motors Corp. v. Ruckelshaus,* 742 F.2d 1561, 1565 (D.C.Cir.1984) (finding interpretive a rule that restated consistent agency practice based on the EPA's understanding of the recall provision of the Clean Air Act), *cert. denied,* 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985). In contrast, we have found rules that grant rights and impose obligations to be substantive. *See, e.g., Batterton v. Marshall,* 648 F.2d 694, 701–02 (D.C.Cir.1980).

The Park Service maintained, at oral argument, that the storage rule interprets and restates the duties embodied in the existing regulation prohibiting camping except in designated areas. *See* 36 C.F.R. § 7.96(i)(1) (defining camping as "use of park land for living accommodation purposes ..., or making preparations to sleep ..., *or storing personal belongings,* or making any fire ...") (emphasis added). We find this argument disingenuous and late. There is no indication that the Park Service even intended the storage rule as a construction of the camping regulation. *See Chamber of Commerce,* 636 F.2d at 468 (explaining that a rule is interpretive if the agency intended the rule to be no more than an expression of its construction of a statute or rule but reviewing the plausibility of an agency's contention that it did so intend).

The text of the Lafayette Park storage rule neither cites the camping regulation nor mentions the word "camping". Before oral argument, the Park Service had not characterized the Lafayette Park storage rule as an interpretation of the camping regulation. Its publication of the rule calls it an "additional condition," and describes it and other additional conditions as adopted pursuant to both clause 13 and a rule permitting the regional director to limit sound amplification equipment. In contrast, an interpretive rule explains an existing requirement; it does not impose an "addition-

al" one. Even in its brief submitted in this case, the Park Service did not claim that the storage rule was merely an interpretation of the camping regulation. Moreover, the Park Service adopted the storage rule for Lafayette Park only, whereas the camping regulation is applicable to all national capital region parks. When the Park Service adopted a similarly site-specific, albeit stricter, regulation prohibiting storage of property on the sidewalks surrounding the White House, the Park Service adopted it as a substantive rule requiring notice and comment, not as an interpretive rule. *See* 36 C.F.R. § 7.96(g)(5)(ix).

We find this evidence persuasive that the Park Service intended the Lafayette Park storage rule as an independent substantive rule. A reviewing court need not classify a rule as interpretive just because the agency says that it is. *See Chamber of Commerce,* 636 F.2d at 468. The fact that this rule establishes a criminal offense entailing possible imprisonment for the violator is even more reason for this court to be wary of the agency's last minute justifications.

The Park Service also argues that it did not include the storage rule when it engaged in notice and comment because it wanted to vary rules according to site. There is an exemption to the APA that permits an agency to promulgate a rule without notice and comment when the agency finds for "good cause" that the procedures are impracticable, unnecessary, or contrary to the public interest. *See* 5 U.S.C. § 553(b)(B), (d)(3). To come within that exemption, the agency must incorporate, in the rule issued, a statement explaining why it found good cause to omit those procedures, *see* § 553(b)(B). Because the Park Service did not incorporate any such statement in the "additional conditions" that contained the Lafayette Park storage rule, we need not decide whether the Park Service had good cause to disregard APA procedures. We do note, however, that the Park Service's previous adoption of extensive and detailed site-specific regulations after notice and comment erects a high burden of persuasion.

### III. CONCLUSION

The rule that appellant was convicted of violating is a substantive regulation, subject to the APA's procedural requirements but adopted in their absence. Before a person is threatened with jail for such a violation, the government must ensure that the rule itself is not in violation of the law.

The government cannot meet that burden in this case. Appellant's conviction is

*Reversed.*