**CLIPPER CRUISE LINE, INC., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 94–1094–LFO.**

United States District Court, District of Columbia.

June 8, 1994.

Michael Joseph and Alex Blanton, Dyer, Ellis, Joseph & Mills, Washington, DC, for plaintiff.

Marina Utgoff Braswell, Asst. U.S. Atty., Washington, DC, for defendants.

*MEMORANDUM*

OBERDORFER, District Judge.

Plaintiff, an operator of cruise ships along the Alaskan coast, brought this action against defendants, federal officials responsible for allocating a limited number of permits for ships to enter Glacier Bay, a part of Glacier Bay National Park.[1] Plaintiff received no entry permits for the 1995 summer cruise season. Plaintiff contends that defendants' method of allocating permits beginning with the 1995 season violated the notice-and-comment requirements of the Administrative Procedure Act and was arbitrary and capricious. Plaintiff has applied for preliminary injunctive relief. A hearing on the applica-

---

1. One of plaintiff's competitors, West Travel, Inc., moved to intervene as a defendant in this action. That motion was granted from the bench at the hearing on June 6, 1994 with no objection from plaintiff or the federal defendants. The term "defendants" in this Memorandum will refer to the federal defendants.

tion took place on June 6, 1994. For the reasons stated below, the accompanying Order denies plaintiff's application for a preliminary injunction.

## I.

Because of environmental and safety concerns, federal regulations limit the number of ships permitted to enter Glacier Bay. Only three cruise ships may enter the Bay each day during the summer months. *See* 36 C.F.R. § 13.65(b)(3). Defendants' agency, the National Park Service, allocates two of these daily permits to Glacier Bay Lodge, Inc., pursuant to the terms of a contract.[2] The Service divides the remaining permits among cruise ship operators such as plaintiff. In order to qualify for entry permits to the Bay itself, an operator must have a concession permit for operation in Glacier Bay National Park. Through the summer 1993 season, defendants divided entry permits for the Bay based on allocations negotiated by operators who held concession permits.

All operators' concession permits expired at the end of 1993. On July 26, 1993, the Park Service issued a prospectus inviting applications by September 23, 1993 for new concessions to receive "a fixed number" of entry permits to the Bay for the 1994 through 1997 seasons. Pl's Ex. K–2 at 3. The prospectus noted that marine casualties and environmental impact on the Park would be the primary criteria for scoring applications. *Id.* at 11. The Service received four timely applications. Plaintiff ranked last among the four, but it met the minimum requirement set forth in the prospectus to receive a concession. Pl's Ex. O at 2. A primary reason for plaintiff's low rating was a collision in August 1993 between plaintiff's vessel and a charted rock in the Bay. The Park Service's explanation of plaintiff's rating called that collision, which caused a discharge of diesel fuel into the bay and required evacuation of passengers, "the most serious incident in park history involving this large a vessel." Pl's Ex. D–3 at 3.

Subsequently, the Park Service allocated the available permits among the concession-

aires by awarding each, in descending order of their scores on the evaluation, the number of permits it requested. The result of this process was that the two highest-scoring applicants received the full numbers of entry permits they requested; the third-highest scoring applicant received less than the number of permits it requested; and plaintiff received no permits. Because it met the minimum requirements of the prospectus, plaintiff did receive a concession permit. This permit allows it to operate elsewhere in the Park, to operate in the Bay outside the summer months, and, significantly, to operate in the Bay during the summer if it can obtain entry permits through other means, such as repurchase from other operators—an option that has been available in the past.

Because planning for the summer 1994 season was underway by the time the Service received and scored the concession applications late in 1993, the Park Service and the other operators reached an agreement that gave plaintiff all the entry permits it had requested for 1994. Thus, the first season that relief in this action would affect is the 1995 season, for which planning is now underway. Because of the need to finalize schedules, plaintiff has requested a decision on its application for preliminary injunction by June 15, 1994.

## II.

Plaintiff must satisfy a four-factor test to secure a preliminary injunction. It must demonstrate a substantial likelihood of success on the merits; immediate and irreparable injury absent relief; that the threatened harm to it substantially outweighs any harm that an injunction might pose to defendants; and that the injunction it seeks will serve the public interest. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977). In this case, plaintiff's Motion for Preliminary Injunction must be denied because it has not demonstrated sufficient likelihood of success on the merits and because it has failed to

**2.** Plaintiff has not challenged the propriety of    this initial allocation to Glacier Bay Lodge.

demonstrate any irreparable injury.[3]

## A.

■ In order to show a likelihood of success on the merits, plaintiff must present a legal basis for the relief it seeks. Plaintiff first suggests that defendants, in implementing their new procedure for allocating entry permits, improperly failed to follow the notice-and-comment requirement of the Administrative Procedure Act, 5 U.S.C. § 553 (the "Act"). In response, defendants note that the Act's notice-and comment provision expressly exempts from its requirement "matter[s] relating to ... public property." 5 U.S.C. § 553(a)(2); see Wilderness Public Rights Fund v. Kleppe, 608 F.2d 1250, 1253 (9th Cir.1979). There is no dispute that defendants' procedure for allocating entry permits to Glacier Bay is a matter relating to public property.

Plaintiff argues that the exemption is not available to defendants in the circumstances here, relying on the decision of the Court of Appeals for this Circuit in United States v. Picciotto, 875 F.2d 345 (D.C.Cir.1989). In that case, the Court reversed the conviction of a woman who had demonstrated in Lafayette Park, a national park, in violation of a regulation, because the Park Service had promulgated the regulation without the notice and comment required by the Act. Picciotto differs from the instant case in two definitive respects. First, the Service argued there that its particular rules regarding demonstrators in national parks were exempt from the Act's notice-and-comment requirement because it had promulgated such an exemption in an earlier, global rule. The Court's rejection of this rulemaking gambit was the gravamen of its holding. See id. at 346–47. The Service appears not to have raised, and the Court did not reach, the Act's public property exception. Second, Picciotto

played out against a background not present here: a criminal prosecution with a constitutional dimension.

■ Because the Act's notice-and-comment requirement does not apply here, the only possible basis for the relief plaintiff seeks is the duty of the agency not to take actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of the Act. 5 U.S.C. § 706(2)(A).[4] Defendants concede that the public property exemption does not dilute this statutory obligation of the Service.

Plaintiff argues that the Service arbitrarily violated the statement of its own prospectus that each operator receiving a concession permit would also receive a "fixed number" of entry permits. Defendants reply, plausibly, that their process yielded to plaintiff a fixed number: zero. Plaintiff also argues that its denial of entry permits violates defendants' own regulations that define the reasons permits can be denied. Defendants reply that they denied plaintiff permits on the rational ground that they had already issued permits for the full capacity of the Bay. See 36 C.F.R. § 1.6. Defendants contend further that they allocated entry permits based on the same merit system that determined, without objection from plaintiff, whether concession permits would be granted. Ultimately, the allocation that denied permits to plaintiff followed from plaintiff's lowered score, which in turn followed from the "serious" collision involving plaintiff's vessel—not an obviously irrational basis for a decision. Although defendants' complete denial to plaintiff of any permits for entry into Glacier Bay raises a concern about whether some other permit allocation system might be fairer and more proportional, such a concern does not carry plaintiff's burden at this preliminary stage of the proceedings.

---

**3.** It is also questionable whether the relief plaintiff seeks would benefit the public interest and, given the competitive circumstances in which this action arises, whether the harm to plaintiff absent relief would outweigh the harm relief would cause to defendants, especially the intervenor. Plaintiff's failure to make the first two showings required for injunctive relief, however, renders analysis of these latter two factors unnecessary.

**4.** At the hearing on June 6, 1994, plaintiff suggested for the first time that the basis for its action might lie in the Due Process Clause. However, plaintiff failed to articulate any constitutionally cognizable injury that it has suffered. Accordingly, its basis for relief must lie, if at all, in the Administrative Procedure Act.

**4**

### B.

█ Plaintiff claims that the profits and goodwill it would lose if it were foreclosed from entering Glacier Bay during the 1995 summer cruise season would constitute irreparable injury. However, plaintiff's claimed injury would be wholly economic in character, and "economic loss does not, in and of itself, constitute irreparable harm." *Wisconsin Gas Co. v. Federal Energy Regulatory Commission*, 758 F.2d 669, 674 (D.C.Cir. 1985). A threatened economic loss may be an irreparable injury "only where the loss threatens the very existence of the movant's business." *Id.* Plaintiff has not alleged such a dire consequence in this case. Should plaintiff eventually prove that defendants' actions have wrongfully injured it, for ought that now appears, money damages would provide an adequate remedy. Damages for lost profits might be calculated either by 1) comparing plaintiff's profits for past seasons when it had entry permits to profits for the 1995 season or by 2) assessing the market value of resold entry permits. Plaintiff has also failed to show that its claimed loss of goodwill, defined by its inability to advertise Glacier Bay as part of its tour packages, could not be quantified by expert testimony and adequately redressed by money damages.

In addition, it is undisputed that plaintiff's concession permit makes it eligible to operate in Glacier Bay National Park, although plaintiff's lack of access to the Bay would make its product less appealing than tours offered by competitors with entry permits to the Bay. More important, both parties have stated that holders of entry permits have in the past resold unused permits to other operators. Plaintiff's concession permit makes it eligible to use such repurchased entry permits. Defendant stated during the hearing, and plaintiff did not deny, that plaintiff had in the past been offered and declined to purchase permits from resellers. Plaintiff has made no showing that this secondary market will not be open to it for 1995 and subsequent seasons. Plaintiff has also not shown that it has tried and failed to repurchase entry permits or that permits will be unavailable for resale. This defect renders plaintiff's claims that it will lose profits and goodwill insufficiently certain to justify a preliminary injunction.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 8th day of June, 1994, hereby

ORDERED: that plaintiff's application for a preliminary injunction should be, and is hereby, DENIED; and it is further

ORDERED: that a status conference to discuss further scheduling in this matter shall take place on *June 20, 1994 at 1:45 p.m.* in Courtroom No. 3.