WILSON, Circuit Judge,
concurring in the result:
The Attorney General failed to show good , cause to avoid the notice and comment requirements of the Administrative Procedure Act. At oral argument, the government conceded that at the time of his arrest Dean could have been charged with failing to register under either of two existing laws. The first was the Mabama law that provides for up to ten years in prison[1] — a sentence as long as the one *1283 provided, by SORNA. The second was “Megan’s Law,” the federal law that provides for up to one year in prison.[2] The government’s concession highlights the lack of an emergency or threat of real harm attending the promulgation of the regulation. There was little if any support for the Attorney General’s public safety justification that notice and comment “would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions.”[3] The issue is not whether sex offenders should register, but rather whether the addition of one more layer of federal protection atop a substantial quilt of existing state and federal laws merited emergency treatment. Administrative law imposes the doctrine of harmless error, however, and because I conclude Dean suffered no prejudice, I concur with the majority’s decision to uphold his conviction.

I. The Attorney General’s Claims of Emergency Fell Short

While I take seriously Congress’s mandate that sex offenders register then-whereabouts, I accord equal respect to Congress’s requirement that executive agencies provide notice and accept comment before binding this nation with then-rules. The majority opinion quotes but does not give due weight to our circuit’s law requiring us to construe narrowly the good cause exceptions to notice and comment.[4] As I stated above, the existence of stringent state and federal criminal sanctions on the books at the time the regulation was promulgated obviated the case for an emergency.[5] Indeed, every state already had its own registration law.[6] *1284 Moreover, the majority opinion misapprehends the legal apparatus of sex offender registration and the federal government’s role in it.
The majority opinion cites “the power of federal law enforcement, including the United States Marshals Service,” as a reason to augment the federal prosecutorial arsenal without notice and comment. But in this case the Prattville Police Department received the initial tip about Dean and arrested him. That local and not federal law enforcement made the case is hardly anomalous. Local and state law enforcement shoulder much of the burden of registering and tracking sex offenders.[7] In the last fifteen years, Congress has stepped up its role, but no one would argue Congress took over the job from the states. In any event, had the U.S. Marshals found Dean first, they were already empowered to charge him under Megan’s Law. While SORNA undoubtedly offers benefits unique to a nationwide clearinghouse of information, the U.S. Marshals offer no systemic punch to SORNA, much less assistance justifying the avoidance of notice and comment.
The emergencies cited by the majority opinion highlight the extent to which this case did not present an emergency or threat of real harm. One example given was price controls. Advance notice of price controls is harmful precisely because the advance notice spurs people to price-gouge, hoard, and engage in all the other market dysfunctions that price controls are supposed to cure in the first place. See U.S. Steel Corp. v. EPA, 595 F.2d 207, 214 n. 15 (5th Cir.1979), reh’g granted, 598 F.2d 915, 916 (5th Cir.1979). While no one here has suggested, of course, that advance notice of the regulation would aggravate the problem of unregistered sex offenders, the Attorney General has failed to explain why rushed promulgation would solve the problem. In short, the example of price controls does not help the government here.
Other emergencies that other courts have upheld as a basis for good cause — a problem arising after the passage of a statute, such as a rash of tour helicopter accidents claiming four lives, Haw. Helicopter Operators Ass’n v. FAA, 51 F.3d 212, 214 (9th Cir.1995) (quoting U.S. Steel, 595 F.2d at 214); or a daycare food rule passed under clear pressure from Congress for quick action, Petry v. Block, 737 F.2d 1193, 1200-01 (D.C.Cir.1984) — also *1285 fail to track the facts here. Thus, the Attorney General’s case for an emergency or threat of serious harm should be rejected. The good-cause exception, my late colleague Judge Godbold wrote, should not be used “to circumvent the notice and comment requirements whenever an agency finds it inconvenient to follow them.” U.S. Steel, 595 F.2d at 214.[8]
The majority opinion, in trying to shore up the Attorney General’s case, also asserts that there was good cause to avoid notice and comment because SORNA substantially expanded the Megan’s Law definition of covered offenses. The definition is hardly anemic, however, notwithstanding the majority opinion’s description of it as “substantially narrower and less comprehensive” than SORNA’s.[9] The Attorney General, on the other hand, described the SORNA revisions as strengthening and increasing the effectiveness of sex offender registration, and eliminating “potential gaps and loopholes under the preexisting standards.” 72 Fed.Reg. at 8895. Such language bespeaks a fine-tuning, not an emergency. The majority opinion cites the addition of foreign and some juvenile offenders — -an expansion, to be sure, but hardly a sea change. While I am fully *1286 aware of the generally expansive nature of SORNA,[10] my point is that expansion by itself does not equal emergency.
The majority opinion also touts the sharp increase in federal penalty, to ten years under SORNA from one year under Megan’s Law, as a justification for avoiding notice and comment. This argument actually cuts against the government, which has no reply to Dean’s bedrock point that notice is particularly important in matters of criminal liability.[11] “Certainly, a criminal prosecution founded on an agency rule should be held to the strict letter of the APA.” United States v. Picciotto, 875 F.2d 345, 346 (D.C.Cir.1989). “[T]he purpose of the thirty-day waiting period is to give affected parties a reasonable time to adjust their behavior before the final rule takes effect.” Omnipoint Corp. v. FCC, 78 F.3d 620, 630 (D.C.Cir.1996).[12]
Yet, on the day after the Attorney General promulgated its regulation, sex offenders likely had no clue that their maximum federal penalties for failing to register had increased overnight from one year to ten. Likewise, many people who had no obligation to register under Megan’s Law now faced federal prison time, if I grant the majority opinion’s point that SORNA greatly expanded the pool of sex offenders eligible for registration.[13] I agree with the majority opinion that the arbitrary-and-capricious standard probably governs review of the agency action here,[14] and I acknowledge that the stan *1287 dard is deferential. At the same time, I note the practical ease of denying convicted sex offenders the right to receive notice that overnight their federal criminal penalties for failing to register had increased tenfold.
The Attorney General’s statement in the Federal Register concluded that it would “accordingly be contrary to the public interest” to provide notice and comment under § 553(b)(e) or the 30-day pre-enactment waiting period under § 553(d). 72 Fed.Reg. at 8897. But the Attorney General’s own APA manual describes the public-interest exception as one “in which the interest of the public would be defeated by any requirement of advance notice.” Util. Solid Waste Activities Group v. EPA, 236 F.3d 749, 755 (D.C.Cir.2001) (quoting U.S. Dep’t of Justice, Attorney General’s Manual on the Administrative Procedure Act 31 (1947)). The example the manual gives to illustrate the public-interest exception is price controls, which as I have discussed does not help the government here. In sum, the Attorney General failed to show good cause to avoid notice and comment.

II. In Passing SORNA, Congress Factored in Delay

The bottom line is that Congress factored delay into SORNA when it wrote the law. To this point the majority opinion has no good reply. In drafting SORNA Congress clearly took the larger view on the problem of unregistered sex offenders. Congress unquestionably had the power to release the Attorney General from the requirements of the APA. See Asiana Airlines v. FAA, 134 F.3d 393, 398 (D.C.Cir.1998). Indeed, Congress could have decided on its own to make SORNA apply to pre-enactment convictions, instead of delegating that decision to the Attorney General.[15] Congress however unambiguously declined to adopt either option. Congress balanced the costs and benefits of allowing the Attorney General to determine SORNA’s pre-enactment reach, and in doing so it countenanced the inevitable delays of administrative rulemaking. See Cain, 583 F.3d at 421; Gould, 568 F.3d at 480-81 (Michael, J., dissenting). Notably, the Attorney General took seven months from the passage of SORNA to publish its interim rule. Yet that time-span is absent from the Attorney General’s claims of emergency timing. What’s more, Congress’s allocation of three years, plus extensions, to the states to comply with SORNA means Congress did not perceive an emergency. In short, the intent of Congress as captured in the plain words of SORNA was not to relieve the Attorney General of the requirement for notice and comment.

*1288
III. Harmless Error Analysis Dooms Dean’s Appeal

Here, however, Dean’s argument falters. I concur in the result upholding his conviction because another, equally potent requirement of the APA compels it: harmless error review. The passage of five months between promulgation of the regulation and Dean’s arrest rendered harmless the lack of pre-enactment notice and comment.
“In administrative law, as in federal civil and criminal litigation, there is a harmless error rule.”[16] The APA instructs reviewing courts to take “due account ... of the rule of prejudicial error.” 5 U.S.C. § 706. “If the agency’s mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration.” PDK Labs. Inc. v. DEA 362 F.3d 786, 799 (D.C.Cir. 2004). Dean claims prejudice — that without a valid regulation, there was no basis to charge him in the first place. The analysis however is narrower. Reversal is not necessary when the error has “no bearing on the procedure used or the substance of decision reached.” Braniff Airways, Inc. v. C.A.B., 379 F.2d 453, 466 (D.C.Cir.1967) (quotation omitted). Because Dean would stand to benefit here from two parts of the APA — the notice and comment provisions of § 553(b)(c), and the pre-enactment waiting period of § 553(d) — I discuss any prejudice to him caused by the avoidance of each in turn.
I deal first with the more straightforward issue of pre-enactment delay. Section 553(d) requires a 30-day lead time from notice to effective date. Here, five months elapsed between promulgation of the regulation and Dean’s arrest.[17] Even if the Attorney General had no good cause to waive § 553(d), Dean was not prejudiced.
The prejudice analysis for notice and comment involves more. The burden is on Dean as a petitioner to show that, had he had an opportunity for pre-promulgation comment under § 553(c), he could have arguably mounted a “credible challenge” for changing the rule as it affected him. Utility Solid Waste, 236 F.3d at 755 (“Petitioners have presented enough to show that on remand they can mount a credible challenge to the amended rule and were thus prejudiced by the absence of an opportunity to do so before the amendment.”). And there was nothing in Dean’s appellate briefs or his counsel’s presentation at oral argument that suggested a reason he could have offered that might have persuaded the Attorney General not to extend SORNA to cover pre-enactment convictions.
The Attorney General did accept post-promulgation comment here, but in U.S. Steel this Court found that post-promulgation comment did not cure a failure to provide pre-promulgation comment. 595 F.2d at 214-15. In U.S. Steel, this Court also denied harmless error analysis to the EPA. Id. at 215. However, U.S. Steel did not flatly rule out harmless error analysis. It was still available to an agency, as long as the petitioner failed to show any prejudice. “Absence of such prejudice must be clear for harmless error to be applicable.” Id.
Moreover, the facts of U.S. Steel differed significantly. In U.S. Steel, Alabama *1289 steel plants were denied the opportunity to comment on EPA air-quality rulings that had the effect of limiting their ability to expand. Determinations of air quality and pollution sources naturally involve complex scientific issues open to various interpretations. Comment from regulated entities is therefore more likely to have an impact on ultimate agency decisions. Here, though, the decision of the Attorney General, as far as Dean cared, was binary — either someone with a pre-enactment offense could be charged, or he couldn’t be. The starker choice increases Dean’s burden to show how he might have changed the deliberation. In the absence of any suggestion from Dean how his comments might have changed the outcome, the sounder conclusion here is that Dean incurred no prejudice from the Attorney General’s failure to accept pre-promulgation comments.[18]
Additional legal authority supports the conclusion that Dean suffered no prejudice because he didn’t show what comment he might have made on the interim rule. See, e.g., Air Transp. Ass’n of Am. v. C.A.B., 732 F.2d 219, 224 n. 11 (D.C.Cir.1984) (panel including then-Judge Scalia) (finding harmless error where petitioner “[did] not explain what it would have said” had it been given earlier access to staff studies); Steel Mfrs. Ass’n v. EPA, 27 F.3d 642, 649 (D.C.Cir.1994) (per curiam) (finding that denial of comment was harmless error when the agency had “adequate and independent grounds” for the standard it set). And, in 1995 the Administrative Conference of the United States made this recommendation regarding “good cause” exceptions:
Where an agency has used post-promulgation comment procedures, responded to significant adverse comments and ratified or modified the rule as appropriate, the Conference suggests that a reviewing court generally should not set aside that ratified or modified rule solely on the basis that adequate good cause did not exist to support invoking the exemption initially. At this stage, the agency’s initial flawed finding of good cause should normally be treated as harmless error with respect to the validity of the ratified or modified rule.[19]
I suggest that these authorities counsel a decision here to uphold the Attorney General’s interim rule.[20]

TV. Conclusion

I conclude that while the Attorney General failed to show good cause to avoid notice and comment, I must find such er *1290 ror harmless, and therefore Dean’s conviction should stand.[21] I recognize that in doing so, I stake out a third position, one different from both sides of the current split between the Fourth, Seventh, and Eleventh Circuits on the one side, and the Sixth Circuit. The Supreme Court should resolve these differences.
I am troubled by the precedent the majority opinion sets today. It is now easier for an administrative agency to avoid notice and comment in our circuit by claiming an emergency or threat of serious harm, whether or not the facts support one. As Dean’s counsel pointed out at oral argument, today’s holding will apply to APA appeals unrelated to SORNA.
For these reasons, I concur in the result.

. Community Notification Act, Ala. Code § 15-20-20 et seq. Since 2005, § 15-20-23(a) has made the failure to register a Class C felony, which is punished by between one *1283 year and one day, and ten years in prison, Ala.Code § 13A-5-6(a)(3).

. Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, 42 U.S.C. § 14071 et seq., was amended May 17, 1996 by Pub.L. No. 104-145, 110 Stat. 1345 (“Megan's Law”). For simplicity's sake, I will hereafter refer to this amended statute as Megan's Law. Since 1998, 42 U.S.C. § 14072(f) has provided for up to one year imprisonment for the first offense of knowingly inter alia failing to register in a new state within ten days of moving there from a state in which registration had been required, 42 U.S.C. § 14072(g)(3)(A)-(B). The second offense carries up to ten years in prison. Id. § 14072(i)(4).

. Applicability of the Sex Offender Registration and Notification Act, 72 Fed.Reg. 8894, 8896 (Feb. 28, 2007) (codified at 28 C.F.R. § 72.3) (emphasis added). Likewise, at oral argument, the government stated that "protection of the public” was the best argument for avoiding notice and comment.

. To be precise, I note that there are two “good cause" exceptions at issue here, and that courts have sometimes held the more detailed one for notice-and-comment at 5 U.S.C. § 553(b)(3)(B) to be more demanding than the one for pre-enactment waiting period at § 553(d)(3). Am. Fed'n of Gov’t Employees v. Block, 655 F.2d 1153, 1156 (D.C.Cir.1981). The difference is not material here.

. It was noted at oral argument that the APA does not use or define the word emergency for these purposes. The word does appear in the case law. See, e.g., Block, 655 F.2d at 1154; Am. Trucking Ass’n, Inc. v. United States, 688 F.2d 1337, 1348 (11th Cir.1982), rev’d on other grounds sub nom. I.C.C. v. Am. Trucking Ass'ns, Inc., 467 U.S. 354, 371, 104 S.Ct. 2458, 2467, 81 L.Ed.2d 282 (1984). This fine point does not change my analysis. Whether one uses the label emergency, threat of real harm, threat of serious harm, or good cause, the same essential question abides: what facts did the Attorney General present as creating a good reason to bypass notice and comment?

. Press Release, U.S. Dep't of Justice, Department of Justice Announces Final National Guidelines for Sex Offender Registration and Notification (July 1, 2008), available at http:// www.ojp.gov/newsroom/pressreleases/2008/ smart08019.htm. Perhaps this fact helps explain why few states have so far made their programs compliant with SORNA — only Ohio and the Umatilla and Yakama confederated tribes have done so. Office of Justice Programs, U.S. Dep't of Justice, SMART Office *1284 Highlights, http:lhvww.ojp.usdoj.gov/smartl (last visited Apr. 12, 2010). In passing SORNA, Congress gave the states three years to comply, with up to two one-year extensions in the discretion of the Attorney General. 42 U.S.C. § 16924. The Attorney General granted the first one-year extension on May 26, 2009. Order No. 3081-2009. To be sure, our circuit has carefully distinguished a state's SORNA obligation to comply from an individual sex offender’s SORNA obligation to register, United States v. Brown, 586 F.3d 1342, 1348-49 (11th Cir.2009). Yet neither Brown, nor the plain text of SORNA, nor the states’ slow progress toward compliance, reveal anything suggesting emergency treatment for the regulation.

. Indeed, for every sex offender in a federal prison, there are at least ten in state prisons. Compare Federal Bureau of Prisons, Quick Facts About the Bureau of Prisons, http://www. bop.gov/aboul/facts.jsp#4 (last updated Feb. 27, 2010) (noting 7,900 federal prisoners with convictions for sex offenses), with Lawrence A. Greenfeld, Bureau of Justice Statistics, U.S. Dep’t of Justice, Sex Offenses and Offenders 22 (1997), available at http://bjs.ojp.usdoj. gov/content/pub/pdf/SOO.PDF (estimating 88,-100 state prisoners in 1994 for rape and sexual assault convictions). Federal authorities rely on the state registration systems in numerous ways. For example, in this case and in other SORNA appeals, the government routinely cites the notices provided by state sex offender registration programs as sufficient to defeat defendant’s due process challenges. See, e.g., Appellee’s Br. 13 n. 11; Brown, 586 F.3d at 1351.

. The majority opinion gave little credit to another justification from the Attorney General: a desire to provide guidance justified emergency treatment. The argument may not deserve even that much credit. In his powerful dissent in United States v. Gould, Judge Michael noted that an agency that wishes to eliminate uncertainty should not label its regulation an "interim rule” or issue a call for post-promulgation comments, “because the possibility of an alteration to the interim rule after its promulgation increases rather than eliminates uncertainty.” 568 F.3d 459, 479 (4th Cir.2009) (Michael, J., dissenting).

. Megan's Law provides that:
(A) The term "criminal offense against a victim who is a minor" means any criminal offense in a range of offenses specified by State law which is comparable to or which exceeds the following range of offenses:
(i) kidnapping of a minor, except by a parent;
(ii) false imprisonment of a minor, except by a parent;
(iii) criminal sexual conduct toward a minor;
(iv) solicitation of a minor to engage in sexual conduct;
(v) use of a minor in a sexual performance;
(vi) solicitation of a minor to practice prostitution;
(vii) any conduct that by its nature is a sexual offense against a minor;
(viii) production or distribution of child pornography, as described in section 2251, 2252, or 2252A of Title 18; or
(ix) an attempt to commit an offense described in any of clauses (i) through (vii), if the State—
(I) makes such an attempt a criminal offense; and
(II) chooses to include such an offense in those which are criminal offenses against a victim who is a minor for the purposes of this section.
For purposes of this subparagraph conduct which is criminal only because of the age of the victim shall not be considered a criminal offense if the perpetrator is 18 years of age or younger.
(B) The term "sexually violent offense” means any criminal offense in a range of offenses specified by State law which is comparable to or which exceeds the range of offenses encompassed by aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18 or as described in the State criminal code) or an offense that has as its elements engaging in physical contact with another person with intent to commit aggravated sexual abuse or sexual abuse (as described in such sections of Title 18 or as described in the State criminal code).
(C) The term "sexually violent predator” means a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.
42 U.S.C. § 14071(a)(3).

. Indeed, my colleagues largely share my view of the broader, expansive scope of SORNA. See, e.g., United States v. Dodge, 597 F.3d 1347 (11th Cir.2010) (en banc) (upholding SORNA registration requirement for an unenumerated conviction under noncategorical analysis, and noting the expansive nature of SORNA's definitions of qualifying offenses).

. In so saying I imply no tolerance for Dean's despicable acts. Dean was convicted of third-degree sexual misconduct in Minnesota in 1994 for sexually abusing his stepdaughter over a period of years. Change-of-Plea Tr. 8; Sentencing Tr. 13.

. Moreover, in United States v. Cain, the Sixth Circuit struck down a SORNA failure-to-register conviction of a man charged twenty-eight days after rule was promulgated. The court wrote: "We are aware of no case, other than Gould, in which a circuit court has upheld a criminal conviction based on a regulation promulgated without thirty days’ advance notice." 583 F.3d 408, 423-24 (6th Cir.2009).

. I note that the majority opinion’s arguments for good cause on the basis of extra help from the U.S. Marshals, and the expanded scope and enhanced penalties of SORNA, do not explicitly appear in the 400-word justification that the APA required the Attorney General to publish as a condition of good cause. Those arguments are at best implicit in the Attorney General’s justification. See 72 Fed.Reg. at 88968897. Courts are not supposed to help an administrative agency malte its case when the agency by itself cannot. In concluding that the Department of Transportation’s explanation of its air-bag rule rescission was lacking, such that the agency acted arbitrarily and capriciously, the Supreme Court wrote in State Farm that "[t]he reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency’s action that the agency itself has not given.” Motor Vehicle Mfrs. Ass’n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983) (citation omitted).

. See, e.g., Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 911 (11th Cir.2007) ("Agency action is considered arbitrary or capricious if the agency has 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.' ”) (quoting State Farm, 463 U.S. at 43, 103 S.Ct. at 2867). At the same time, a reviewing court is not authorized to substitute its judgment for the agency’s "concerning the wisdom or prudence of the proposed action.” N. Buckhead Civic Ass’n v. Skinner, 903 F.2d 1533, 1539 (11th Cir. 1990).

. In United States v. Madera, a panel of this Court held that SORNA did not apply to preenactment sex offenses until the Attorney General issued its regulation saying as much. 528 F.3d 852, 857 (11th Cir.2008) (per curiam). The Fourth, Sixth, and Seventh Circuits agreed. United States v. Hatcher, 560 F.3d 222, 226-29 (4th Cir.2009); United States v. Cain, 583 F.3d 408, 414-19 (6th Cir.2009); United States v. Dixon, 551 F.3d 578, 582 (7th Cir.2008), cert. granted sub nom. Carr v. United States,-U.S.-, 130 S.Ct. 47, 174 L.Ed.2d 631 (2009), argued, No. 08-1301 (Feb. 24, 2010). However, the Eighth Circuit and the Tenth Circuit, as well as the Attorney General himself, concluded that on the face of SORNA's text, SORNA applied to earlier convictions at the moment of its passage, and that therefore the Attorney General's regulation served only to clarify rather than to impose new liability. United States v. Hinckley, 550 F.3d 926, 929-35 (10th Cir. 2008), cert. denied, - U.S. -, 129 S.Ct. 2383, 173 L.Ed.2d 1301 (2009) (agreeing with the Attorney General’s interpretation); United States v. May, 535 F.3d 912, 916-19 (8th Cir.2008), cert. denied, - U.S. -, 129 S.Ct. 2431, 174 L.Ed.2d 229 (2009) (same); Applicability of the Sex Offender Registration and Notification Act, 72 Fed.Reg. 8894, 8896 (Feb. 28, 2007) (codified at 28 C.F.R. § 72.3).

. Nat'l Ass’n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 659-60, 127 S.Ct. 2518, 2530, 168 L.Ed.2d 467 (2007) (Alito, J.) (quoting PDK Labs. Inc. v. DEA, 362 F.3d 786, 799 (D.C.Cir.2004)).

. At this point I go past the Sixth Circuit in Cain, which explicitly took no position regarding a conviction for failing to register during a time more than thirty days after publication of the regulation. 583 F.3d at 424 n. 7.

. The final regulation, issued by the Attorney General almost a year after Dean’s arrest, changed little in essential respects. See National Guidelines for Sex Offender Registration and Notification, 73 Fed.Reg. 38030 (July 2, 2008). The final Guidelines reflected numerous small changes made in response to adverse comments about retroactivity, id. at 38031, and treatment of juveniles and tribal issues, id. at 38030, among other topics.

. Adoption of Recommendations, Recommendation 83-2, "The ‘Good Cause’ Exemption from APA Rulemaking Requirements,” 60 Fed.Reg. 43108, 43112 (Aug. 18, 1995). From its founding in 1961, the Administrative Conference of the United States issued recommendations intended to improve administrative law. Justice Scalia served as chair of the conference from 1972 to 1974, and Justice Breyer was a conference member from 1990 to 1994. Congress stripped the conference of its funding in 1995. President Obama recently decided to reinstate the conference.

. The Sixth Circuit did not discuss harmless error in United States v. Cain, although its holding is consistent with a finding of prejudice regarding § 553(d) pre-enactment delay. Another panel of the Sixth Circuit did discuss harmless error in United States v. Utesch, 596 F.3d 302, 311-13 (6th Cir.2010), a case that extended Cain's rationale to a defendant indicted seven months after the regulation was promulgated. But the Utesch discussion lacks an analysis of prejudice.

. Our Court held in United States v. Madera that without a valid regulation, a SORNA conviction for failing to register for a preenactment sex offense could not stand. 528 F.3d at 859. But because I uphold the regulation on harmless error grounds, Madera does not block Dean’s prosecution. I also note that Madera is factually distinguishable from the instant case because the defendant there was arrested four months before the Attorney General issued the regulation. Id. at 854.